[Civ. No. 1071.    Third Appellate District.—May 31, 1913.]

## J. P. HAMMOND, Appellant, v. OCEAN SHORE DEVELOPMENT COMPANY (a Corporation), Respondent.

VENUE—ACTION AGAINST CORPORATION—WHERE MAY BE BROUGHT.—In an action against a corporation for the recovery of money the plaintiff has the right to elect to sue in the county where the contract is made, or is to be performed, or where the *obligation or liability* arises, or the breach occurs, or in the county where the principal place of business of the corporation is situated.

ID.—MOTION FOR CHANGE OF VENUE—BURDEN OF PROOF TO DEFEAT.— When the corporation has shown that its principal place of business, which is its residence, is in another county, to defeat the motion for a change of venue the burden of proof is upon the plaintiff to show that the contract was made, or was to be performed, or that the obligation or liability arose, or the breach occurred in the county where the action is brought.

ID.—RESCISSION OF CONTRACT FOR FRAUD—PLACE OF ACTION TO RECOVER MONEY PAID.—In this action to recover money alleged to have been paid, through false representations, to the defendant corporation as part of the purchase price of land, a change of venue is properly granted to the county where the defendant has its principal place of business, and where the contract was dated and signed, the action having been brought in another county, and the land being situated in a third county.

ID.—CONTRACT—PLACE OF PERFORMANCE.—The place at which a contract bears date is *prima facie* the place where it was made; and it is a fair deduction that the contract is to be entirely performed at the place where it was made and provides that payment shall be made.

ID.—"DATE"—DEFINITION OF TERM.—The word "date" is "the designation or indication in an instrument of writing of the time and place when and where it was made."

ID.—RESCISSION OF CONTRACT — PLEADING — PLACE OF TENDER.—In an action to rescind a contract and recover payments made thereunder, the plaintiff should plead the place of tender; and if he does not do so, there can be no presumption in his favor as to the place where it occurred.

ID.—RESTORATION OF CONSIDERATION—PLACE FOR MAKING.—It is the duty of a rescinding party to restore the consideration received, in the absence of any place appointed by the creditor, at the place where the creditor can be found, which in the case of a corporation is its principal place of business.

ID.—PLACE OF ACTION—ALLEGATION AS TO PLACE OF INDEBTEDNESS.—A count for money had and received, alleging that the defendant was indebted to the plaintiff in a certain county, is not equivalent to an allegation that the defendant became indebted to the plaintiff in that county, so as to fix the place of action.

APPEAL from an order of the Superior Court of Mono County granting a motion for change of venue. J. D. Murphey, Judge.

The facts are stated in the opinion of the court.

Joseph K. Hutchinson, and Walter Slack, for Appellant.

Byrne & Lamson, and Wesley W. Kergan, for Respondent.

BURNETT, J.—Plaintiff brought the action to recover the sum of three hundred and thirty-five dollars which, it is alleged, he was induced, by false and fraudulent representations, to pay to defendant as a part of the purchase price of certain lots of land in San Mateo County. Defendant appeared and in proper form moved for a change of venue to the city and county of San Francisco, supporting the motion by an affidavit of the president of the corporation in which it was set out: That said defendant has now and did have at the time of the commencement of this action, its principal place of business in the city and county of San Francisco, and does not now and never did maintain any office of any character in the county of Mono; that the contract referred to in the complaint on file herein and attached thereto, was made at and was to be

performed in the said city and county of San Francisco; that if there was any breach of said contract it occurred in said city and county; and concluding with the usual averment of meritorious defense.    The motion was heard upon this affidavit and the complaint in the action, and duly granted, and the appeal is from said order.

Section 16 of article XII of the state constitution provides: "A corporation or association may be sued in the county where the contract is made or is to be performed, or where the obligation or liability arises, or the breach occurs; or in the county where the principal place of business of such corporation is situated, subject to the power of the court to change the place of trial as in other cases."

It is thus made plain that the plaintiff has the right to elect to sue the corporation in the county where the contract is made, or is to be performed, or where the obligation or liability arises, or the breach occurs, or in the county where the principal place of business of the corporation is situated. (*Trezevant* v. *Strong Company,* 102 Cal. 47, [36 Pac. 395].)

In applying the said constitutional provision the rule is that when the corporation has shown that its principal place of business, which is its residence, is in another county, to defeat the motion for a change of venue the burden of proof is upon plaintiff, in an action like this, to show that the contract was made, or was to be performed, or that the obligation or liability arose, or the breach occurred in the county where the action is brought.    (*Brady* v.  *Times-Mirror Co.,* 106 Cal. 56, [39 Pac. 209] ; *Griffin & Skelly Co.* v. *Magnolia & Healdsburg Fruit Cannery Co.,* 107 Cal. 378, [40 Pac. 495].)

As to the contract, from the showing made, the court was not compelled to find that it was either made or to be performed in Mono County, but it was justified in the conclusion that the contract was made and ultimately to be performed in the city and county of San Francisco.    This position is supported by the following considerations: It is not alleged in the complaint that the contract was either made or to be performed in Mono County.    The complaint as to this is at most vague and uncertain.    It would have been a simple matter to conclude the question by a plain and direct averment, but the pleader seems studiously to have avoided taking an unequivocal stand in the premises.    He has fallen short of the require-

ment of the rule of evidence upon the subject. On the contrary, it appears from the complaint that the contract was dated at San Francisco, and the presumption is that a writing is truly dated. (Code Civ. Proc., sec. 1963, subd. 23.)

The word "date" is defined in Bouvier's Law Dictionary as "The designation or indication in an instrument of writing of the time and place when and where it was made."

The place at which a contract bears date is held to be *prima facie* the place where the contract was made. (*Bronte* v. *Leslie,* 30 Ill. App. 288; *Hoppins* v. *Miller,* 17 N. J. Law 185; *Hefflebower* v. *Detrick,* 27 W. Va. 16.)

And, of course, it would be a fair deduction that the contract was to be entirely performed at the place where it was made and where the defendant resides and where it was expressly provided that the payments by plaintiff should be made.

The complaint, indeed, contains an allegation that plaintiff, at the date of the execution of the contract, was a resident of and was in the county of Mono, but this is not inconsistent with the view that plaintiff may have signed the contract in said county and then sent it to San Francisco where it was signed by defendant and there delivered to plaintiff's agent; the time and place for the consummation of a contract being when and where the last act necessary for its validity has been performed.

Regardless, then, of the positive averment in respondent's affidavit to that effect, the court was justified in holding that said contract was made and to be performed in San Francisco.

No breach of the contract was alleged and the only remaining question is, therefore, *Where* did the obligation of the defendant arise to pay back the money received under said contract?

The answer to this depends upon the answer to the further question, *When* did said obligation arise?

It is the contention of respondent that, under no possible theory, could this obligation arise at the time the false representations were made in Mono County, and not until, at least, the fraud was consummated. This is in accordance with the rule stated in 20 Cyc., page 90, that "Aside from matters involving the statute of limitations, a cause of action in deceit

accrues immediately upon the successful consummation of the fraud, provided that the fraud results in injury to plaintiff.''

When was the fraud consummated? The allegations of the complaint permit only three possible answers to this question: 1. When the contract was executed; 2. When the plaintiff paid the money pursuant to the terms of the contract, and 3. When plaintiff rescinded the contract.

As to the first, we have already seen that the contract appears to have been executed in San Francisco.

The conclusion is equally satisfactory that the money was paid at the same place. The contract acknowledges, at San Francisco, the receipt of three hundred dollars and provides for the payment of the balance in that city. The thirty-five dollars additional is alleged to have been paid to defendant ''under and pursuant to the terms of said contract.'' This is equivalent to stating that it was paid in San Francisco.

But it is quite clear that the complaint is framed upon and requires the adoption of the theory that the cause of action accrued when the plaintiff performed the last act in the rescission of the contract. Until then it can hardly be said that the obligation of defendant arose to repay the money received from plaintiff.

The doctrine is, of course, quite familiar and need not be elaborately restated here as to the choice of remedies open to the defrauded party between an affirmance of the contract followed by a suit for damages, and the absolute rescission of the contract with the appropriate and corresponding action to recover the consideration parted with.

In the case at bar there can be no mistake as to the election of plaintiff.

The representations which induced the agreement to purchase are set out, the other essential elements of fraud and the payment of this money clearly appear, and then it is alleged that, on the fifth day of February, 1912, ''plaintiff promptly rescinded said contract and gave to defendant due and proper notice in writing of such rescission; that on said 5th day of February, 1912, plaintiff tendered to defendant . . . a quitclaim deed covering said property; that said plaintiff, on said fifth day of February, 1912, further offered to restore to defendant each and every and all benefits which defendant might claim that plaintiff had received under the terms of said

contract." Then follow the allegations of the demand for the return of the three hundred and thirty-five dollars and defendant's refusal to return or to repay any portion of the same.

The action is thus clearly brought under the terms of section 1691 of the Civil Code, and the allegation of the offer to restore what was received from defendant is essential to the statement of a cause of action and without said allegation the liability of defendant to return the money would not be shown. This arises from the consideration that the contract was voidable at the option of the vendee on the discovery of the fraud. It is no doubt true that plaintiff might have waived the fraud and ratified the contract either expressly or by implication, but having chosen to rescind, his cause of action became complete and the liability of defendant accrued when the offer was made to restore the parties to *statu quo.*

The question then arises, Where did this culminating act of rescission take place? As to this the complaint is silent. The place of tender should have been pleaded. (38 Cyc. 168; *Trabue* v. *Kay,* 4 Bibb (Ky.), 226; *Harding* v. *York Knitting Mills,* 142 Fed. 228.) Not having pleaded it, the presumption, of course, could not be in favor of plaintiff as to the place where it occurred.

Indeed, the principle already announced requiring the plaintiff to show that he has brought himself within an exception to the general rule, that an action must be brought in the county of the residence of the defendant, would require an allegation that the tender was made in another county than San Francisco, in order to defeat the motion for a change of venue.

There is another view that leads to the same result. In other states it has been held that it is the duty of the rescinding party to return the goods or make the tender at the place where the trade was consummated. (*Young* v. *Arntze,* 86 Ala. 116, [5 South. 253]; *Tyler* v. *Augusta,* 88 Me. 504, [34 Atl. 406]; *Milliken* v. *Skillings,* 89 Me. 180, [36 Atl. 77]; *Mundt* v. *Simpkins,* 81 Neb. 1, [129 Am. St. Rep. 670, 115 N. W. 325].) It has been modified by statute in this state (Civ. Code, sec. 1489). Here the offer can be made: "1. At any place appointed by the creditor; or, 2. Wherever the person to whom the offer ought to be made can be found." No

place was appointed by the creditor and, since respondent could be found only in San Francisco, as that was its place of business, we must assume, of course, that the tender was made in that place.    In this particular the case is analogous to *Bank of Yolo* v. *Sperry Flour Co.*, 141 Cal. 314, [65 L. R. A. 90, 74 Pac. 855], wherein it was said: "Plaintiff is a banking corporation doing business at Woodland, the county seat of Yolo, and a promise to repay money advanced by it—no other place of payment being stipulated—must be deemed a promise to pay at its bank, the only place where it can be found.    This, we think, is a reasonable deduction from the provisions of the Civil Code (secs. 1488, 1489), in regard to the place where an offer of performance may be made."

A fair consideration of the second count of the complaint does not, we think, affect the soundness of the foregoing views. It is a count for money had and received in the usual form. Therein is an allegation that defendant *was indebted* in Mono County, but this manifestly is quite different from an allegation that *defendant became indebted.*    The producing cause of the relation of debtor and creditor and not the condition of indebtedness is the pertinent object of inquiry.    We are not concerned with the question where it *existed* but where it *originated.*    Of course, the debt existed everywhere if it existed at all.

There is also the formal allegation in said second count "That said defendant, being so indebted to said plaintiff, then and there in the county of Mono promised to pay the said sum . . . in the county and state aforesaid upon his request." However, as pointed out by respondent, this promise is but a mere fiction in a count for money had and received and it may be disregarded.    It was not necessary to allege it.    (*McFarland* v. *Holcomb,* 123 Cal. 84, [55 Pac. 761]; *Aydelotte* v. *Billing,* 8 Cal. App. 673, [97 Pac. 698].)

Besides, that this is the mere conclusion of the pleader is shown by the allegation: "That the claim hereinabove set forth in the second count of this complaint arose and arises out of the same transaction out of which arises the claim hereinabove set forth in the first count of this complaint."

In other words, the entire transaction is set out in the first count and the plaintiff attempts in the second count to set out

the same cause of action in the convenient form for money had and received for his use and benefit.

We deem it unnecessary to consider the contention of respondent that the bill of exceptions should be disregarded for the reason that it was not presented in time, as we think upon the record the order should be affirmed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.